GEORGE CASHMAN *v.* McTERNAN SCHOOL, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 7—decided December 1, 1943.

*Walter E. Monagan,* for the defendants.

*J. Warren Upson,* with whom, on the brief, was *Lawrence L. Lewis,* for the plaintiff.

BROWN, J. The plaintiff was employed as an instructor by the McTernan School, Inc., within the Workmen's Compensation Act, at the average wage of $28 per week. On October 22, 1940, while kicking a soccer ball, he sustained an injury to his left hip. This injury arose out of and in the course of his employment. About August, 1938, the plaintiff while wrestling had suffered a dislocation of this hip which was in no way connected with any employment. The dislocation was completely reduced and thereafter gave the plaintiff no trouble, he being able to perform all of the activities of his employment up to the accident

of October 22, 1940. The 1938 injury resulted in an aseptic necrosis of the femoral head of the plaintiff's hip. This is a progressive disease. While the plaintiff had suffered from the results of this first injury, those results were dormant and had caused him no disability or loss of use of the injured member. No waiver on the condition of his hip was asked or taken by the school. The act of kicking the soccer ball on October 22, 1940, was the immediate occasion of the injury to the plaintiff and the disability from which he suffers. Subsequent to this injury his condition became aggravated so that he had to curtail his activities and wear a walking caliper on this leg. He lost no time or wages from his employment, however, so that he is entitled only to the specific indemnity provided for a partial loss of use of his leg. General Statutes, Cum. Sup. 1939, § 1328e. As a result of the second injury the plaintiff sustained an aggravation of a pre-existing disease, not occupational, originally caused by the first injury. As of February 2, 1943, the date of the commissioner's award, the plaintiff had a 60 per cent loss of function and disability of the left leg, 25 per cent of which was caused by the second injury and 75 per cent by the progressive effect of the aseptic necrosis resulting from the first injury. This loss of use of the leg will become progressively greater. Upon these undisputed facts of his amended finding, the commissioner, "subject to all proper modification in the event that the claimant's disability increases," awarded the plaintiff compensation at the rate of $14 per week for a period of one hundred twenty-four and eight-tenths weeks, representing the amount due for 60 per cent loss of use of the left leg. Upon the defendants' appeal from this award the Superior Court reserved the case for the opinion of this court.

The vital question for determination is the meaning

of the words "pre-existing disease" as used in § 5223 of the General Statutes. The statute reads: "In the case of aggravation of a pre-existing disease, compensation shall be allowed only for such proportion of the disability or death due to the aggravation of such pre-existing disease as may be reasonably attributed to the injury upon which the claim is based." To state the issue more specifically as applied to this case, is the meaning of "pre-existing disease" restricted to "occupational disease" as defined earlier in the statute, or does it include the nonoccupational disease of aseptic necrosis from which the plaintiff was suffering at the time of his injury? The plaintiff claims that the former is the correct interpretation, justifying the commissioner's award. The defendant claims that the commissioner erred in failing to adopt the latter and so to exclude from the award compensation for that 75 per cent of the plaintiff's disability which was due to the necrosis.

The provision in question in its orginal form first became a part of the Workmen's Compensation Act by an amendment contained in Public Acts, 1919, Chap. 142, § 1. Prior to that enactment compensation under the act depended not upon the condition of health of the employee prior to his injury but upon the hazards of the employment without regard to this condition. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 543, 97 Atl. 1020; *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618, 629, 110 Atl. 63; *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 354, 111 Atl. 193; and see *Mages* v. *Alfred Brown, Inc.*, 123 Conn. 188, 192, 193 Atl. 780. The 1919 amendment by virtue of a further provision contained in it was construed as providing compensation for any disease arising in the course of and out of the employment. *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 120 Atl. 288;

*Kovaliski* v. *Collins Co.*, 102 Conn. 6, 128 Atl. 288. Following subsequent re-enactments (Public Acts, 1921, Chap. 306, §§ 1, 11, and Public Acts, 1927, Chap. 307, §§ 1, 7), both provisions are now a part of § 5223 of the General Statutes.

In urging that the words "pre-existing disease" as used in the statute should be construed to include only occupational disease, the plaintiff relies primarily upon the decision by this court in the case of *Bongialatte* v. *Lines Co.*, 97 Conn. 548, 117 Atl. 696, where in construing the 1919 amendment it was held, one judge dissenting, that the words "aggravation of a disease existing prior to such injury" applied only to the aggravation of an occupational disease. In that case the plaintiff was injured by a blow on the right shoulder arising out of and in the course of his employment. Previous to the injury he was suffering from a tuberculous and syphilitic condition which had become localized in the right shoulder joint resulting in a complete ankylosis. This condition had become stable and would not have materially progressed without some new exciting cause, and it did not disable or incapacitate the plaintiff for his work as a laborer. The blow immediately lighted up the condition previously existing and produced one incapacitating the plaintiff from work. Had the plaintiff been physically normal and in perfect health, the injury probably would not have incapacitated him for more than a short period of time. The court decided that since the plaintiff's pre-existing disease was not occupational he was entitled to compensation for the entire incapacity. In the later case of *Romaniec* v. *Collins Co.*, 107 Conn. 63, 139 Atl. 503, where the plaintiff contracted an occupational disease during the original period of his employment by the defendant and, after working elsewhere, upon his return this disease was aggravated by his re-

employment by the defendant, the provision was held inapplicable. The plaintiff contends that these decisions establish that the provision applies only to occupational disease which had its origin in employment by an employer other than the one in whose employ the aggravating injury occurred.

Whether this contention is correct requires consideration of a more recent decision of this court. In *Henry* v. *Keegan,* 121 Conn. 71, 183 Atl. 14, the plaintiff's decedent was suffering from leukemia, a nonoccupational disease which would ultimately have proved fatal, but by reason of injuries arising out of and in the course of his employment by the defendant his death occurred earlier than it otherwise would. We held the provision applicable, saying (p. 75): "Such a situation calls for apportionment of compensation according to the relative effect, upon the length of the decedent's life, of the injuries and the disease . . . The statute concerning apportionment was obviously intended to meet a situation where an employee having a pre-existing disease suffers a compensable injury and the two operating together result in incapacity which, were it not for the pre-existing disease, would not be so extensive as it in fact becomes or in death which would not have occurred as soon as it did had it not been for that disease, and provides that where a pre-existing disease is aggravated, resulting in a greater incapacity or quicker death than would otherwise result, an apportionment shall be made." The instant case and the *Henry* case may properly be regarded as on all fours upon their facts in so far as the question for determination is concerned. In that case death would have resulted from the pre-existing disease even had the injury not ensued. Likewise in this case incapacity apparently would have resulted from the disease even though the plaintiff had received no

injury, in view of the finding establishing its progressive nature. Both cases are distinguishable upon their facts from the *Bongialatte* case in that there incapacity would not have resulted from the pre-existing disease of the plaintiff's had he not suffered the blow in the course of his employment. Since it was decided in the *Bongialatte* case that the provision applies to occupational diseases only, while the *Henry* case holds that it applies to all diseases, two questions are presented for determination in disposing of the case now before us.

The first is whether the rule adopted in the *Bongialatte* case upon the facts then before the court involved a wrong construction of the statute. As the court there pointed out (p. 551), prior to the adoption of the 1919 amendment, pursuant to the "established construction of our Compensation Act" this court had repeatedly held that "compensation is not made to depend upon the condition of health of the employee, or his freedom from liability to injury through constitutional weakness or latent tendency. . . . 'It is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon an average employee.'" *Hartz* v. *Hartford Faience Co.*, supra, 543, and see other cases cited above with it. The existence of this unquestioned fundamental principle, providing the practical and easily applied rule for fixing the scope of compensation for injury to an employee which it did, afforded strong reason for the construction of the amendment which worked a minimum encroachment upon that rule. In view of this and of the liberal construction to be accorded the Workmen's Compensation Act, we are satisfied that the conclusion in the *Bongialatte* case as thus stated (p. 552) was correct: "The provision

relied upon accompanies and is part of a remedial amendment to the Act, bringing occupational diseases within its provisions, and the reasonable interpretation of the provision in question, in view of its context, is that it refers only to cases involving occupational diseases." The subsequent legislative and judicial history of this provision fortifies our conclusion. Although it was twice re-enacted after that decision (Public Acts, 1927, Chap. 307, § 7 and General Statutes, § 5223), the legislature made no change indicative of an intent to override the construction so accorded. Our decisions up to that in the *Henry* case show no departure from the rule of the *Bongialatte* case. See *Dombrowski* v. *Jennings & Griffin Co.*, 103 Conn. 720, 131 Atl. 745; *Biederzycki* v. *Farrel Foundry & Machine Co.*, 103 Conn. 701, 131 Atl. 739; *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 720, 134 Atl. 259; *Romaniec* v. *Collins Co.*, supra; *Richardson* v. *New Haven*, 114 Conn. 389, 158 Atl. 886; *Savage* v. *St. Aeden's Church*, 122 Conn. 343, 189 Atl. 599; *Nicotra* v. *Bigelow, Sanford Carpet Co.*, 122 Conn. 353, 189 Atl. 603; *Mages* v. *Alfred Brown, Inc.*, supra. The lack of even a claim of apportionment in any of these except the *Biederzycki* and the *Richardson* cases indicates the general recognition of the rule as there adopted.

It is true that in the statement quoted above from the *Bongialatte* case the court used the words "occupational diseases" as meaning under the 1919 amendment any disease resulting from the employment, while the present meaning of the term is considerably less inclusive by reason of the 1927 amendment defining "occupational disease" as "a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." The somewhat narrower application of the provision in question by reason of this

change affords no sufficient reason, however, for modification of the rule.

The second question is whether, by reason of the difference in the facts between this and the *Bongialatte* case, an exception to the general rule should be made and the provision held applicable in the present case. Except as to the judicial history of the statute, the reasons already discussed also lead to the conclusion that no such exception should be made. Nor does the decision in the *Henry* case afford sufficient reason for a contrary result. In the first place the plaintiff did not squarely raise the claim in that case that the provision of the statute was inapplicable. In the second place neither the *Bongialatte* case nor the other relevant decisions cited above were referred to in the opinion. Such an exception would not only involve a departure from the fundamental conception that where no waiver is asked the employer takes the employee in that state of health which is his when the employment begins but would also give rise to most difficult questions in its application. In so far as the *Henry* case is inconsistent herewith it is overruled.

The commissioner was correct in awarding the plaintiff, in addition to a doctor's bill which is not disputed, compensation for the 60 per cent loss of use of the left leg.

The determination of the further questions suggested under the defendants' reasons of appeal, (1) whether a future modification of the award for the loss of use of the plaintiff's leg will be permissible in the event that his disability increases, and (2) whether the defendants can be held liable at some future time for an operation for the relief of pain only, is not involved in the decision of this appeal on the record before us. The proper method for disposing of these questions,

should the necessity arise, will be upon a ruling by the commissioner based on a finding of the material facts as of that time.

The Superior Court is advised that judgment be entered dismissing the defendants' appeal from the commissioner and affirming the award.

In this opinion MALTBIE, C. J., ELLS and DICKENSON, Js., concurred.

JENNINGS, J. (dissenting). I dissent. The terms of the statute are plain and the *Henry* case accords to them a common-sense construction. In my opinion the *Bongialatte* case should be overruled. See Judge Burpee's dissent in that case.