# DERRICK GARTRELL *v.* DEPARTMENT OF CORRECTION*
## (SC 16467)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

---

* This opinion supersedes the opinion of this court in *Gartrell* v. *Dept. of Correction*, 258 Conn. 137, 779 A.2d 124 (2001), which was published on September 25, 2001.

Argued March 22, 2001—officially released January 15, 2002

*Karla A. Turekian,* assistant attorney general, with whom were *William J. McCullough,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Gregory T. D'Auria,* associate attorney general, for the appellant (defendant).

*Morris R. Borea,* for the appellee (plaintiff).

*Opinion*

PALMER, J. The sole issue in this appeal is whether the plaintiff, Derrick Gartrell, who suffered from a preexisting, nonwork-related psychiatric condition that was aggravated by a work-related physical injury, is entitled to workers' compensation benefits for the aggravation of that psychiatric condition notwithstanding General Statutes § 31-275 (16) (B) (ii),[1] which limits

---

[1] General Statutes § 31-275 provides in relevant part: "As used in this chapter, unless the context otherwise provides:

"(1) 'Arising out of and in the course of his employment' means an accidental injury happening to an employee or an occupational disease of an employee originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or

compensation for mental or emotional impairments to those that "[arise] from" a work-related physical injury. We conclude that the plaintiff is entitled to workers' compensation benefits.

The following facts are relevant to our resolution of this appeal. On February 10, 1983, the plaintiff commenced employment with the defendant, the department of correction, as a correctional officer at what is now known as the Willard-Cybulski Correctional Institution in Enfield. As a result of several nonwork-related traumatic events in the plaintiff's personal life, the plaintiff developed mental health problems and, in June, 1994, was diagnosed with post-traumatic stress disorder, for which he subsequently received therapy.

On October 3, 1996, the plaintiff, who had had no prior history of cardiovascular disorders, began to experience intense pain in his chest and left arm, a feeling of tightness in his chest and difficulty breathing. Consequently, the plaintiff sought and received medical care. The plaintiff continued to experience periodic recurrence of these symptoms and, after a variety of tests were performed, the plaintiff was diagnosed with a car-

---

while engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer, provided . . . (D) for aggravation of a preexisting disease, compensation shall be allowed only for that proportion of the disability or death due to the aggravation of the preexisting disease as may be reasonably attributed to the injury upon which the claim is based . . . .

"(16) (A) 'Personal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease.

"(B) 'Personal injury' or 'injury' shall not be construed to include . . .

"(ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ."

diovascular disorder known as vasospastic angina[2] and treated with various medications. After his medical condition began to affect his work performance, the plaintiff was placed on indefinite medical leave beginning October 21, 1997, and, thereafter, sought workers' compensation benefits.

The workers' compensation commissioner (commissioner) held a formal hearing on the compensability of the plaintiff's claim and, on the basis of the evidence presented, concluded, inter alia, that: (1) the plaintiff had sustained a compensable injury, namely, vasospastic angina, on October 3, 1996, that arose out of and in the course of his employment with the defendant;[3] (2) that injury qualified as a "condition of impairment of health" under General Statutes § 5-145a;[4] (3) the plain-

---

[2] Vasospastic angina, also known as Prinzmetal's angina, is characterized by severe pain resulting from intermittent spasms in the coronary arteries that interrupt the blood supply to the heart. See T. Harrison, Principles of Internal Medicine (14th Ed. 1998) p. 1374.

[3] The evidence indicated that the plaintiff's cardiovascular disorder had been caused by work-related stress.

[4] General Statutes § 5-145a provides: "Any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a member of the security force or fire department of The University of Connecticut or the aeronautics operations of the Department of Transportation, or to a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or to state personnel engaged in guard or instructional duties in the Connecticut Correctional Institution, Somers, Connecticut Correctional Institution, Enfield-Medium, the Carl Robinson Correctional Institution, Enfield, John R. Manson Youth Institution, Cheshire, the Connecticut Correctional Institution, Niantic, the Connecticut Correctional Center, Cheshire, or the community correctional centers, or to any employee of the Whiting Forensic Division with direct and substantial patient contact, or to any detective, chief inspector or inspector in the Division of Criminal Justice or chief detective, or to any state employee designated as a hazardous duty employee pursuant to an applicable collective bargaining agreement who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in the performance of his duty and shall be compensable in accor-

tiff's work-related cardiovascular disorder had exacerbated his preexisting post-traumatic stress disorder; and (4) as a result of the foregoing conclusions, the post-traumatic stress disorder also constituted a compensable injury. The commissioner thereupon ordered the defendant to pay the plaintiff temporary total disability benefits in accordance with § 5-145a,[5] along with all reasonable and necessary medical costs incurred in connection with both injuries.

In concluding that the plaintiff's preexisting psychiatric condition had been exacerbated by his work-related physical injury, the commissioner relied primarily on two pieces of evidence, the first of which was an April 21, 1998 letter prepared by Jeryl Brown, the plaintiff's therapist and a licensed clinical social worker. Brown stated in the letter that the plaintiff suffers from post-traumatic stress disorder, that he exhibits symptoms of depression, anxiety and panic, and that those symptoms were exacerbated by the physical symptoms associated with his cardiovascular disorder. Brown recommended therapy sessions twice weekly as treatment.[6] The sec-

dance with the provisions of chapter 568, except that for the first three months of compensability the employee shall continue to receive the full salary which he was receiving at the time of injury in the manner provided by the provisions of section 5-142. Any such employee who began such service prior to June 28, 1985, and was not covered by the provisions of this section prior to said date shall not be required, for purposes of this section, to show proof that he successfully passed a physical examination on entry into such service."

[5] The commissioner ordered the defendant to pay such benefits to the plaintiff for the period commencing October 21, 1997, and ending September 8, 1998, excluding a two week period between November 7 and November 21, 1997. These dates are not at issue on appeal. The commissioner also ordered further hearings "to determine whether the [plaintiff's] temporary total disability extends beyond September 8, 1998." That issue also is not a subject of this appeal.

[6] Brown's letter provides in relevant part: "[The plaintiff] has been a client of mine since [October, 1994], when he entered treatment for symptoms of Post-traumatic Stress Disorder following a serious incident of police harassment. During the course of treatment and related legal ordeal, [the plaintiff] was subjected to significant and repeated incidents of racial harass-

ond piece of evidence was a signed note, dated April 23, 1998, that accompanied Brown's letter, from Brown's colleague, Eliot Barron, a psychiatrist. The note stated in its entirety: "I completely concur with Mrs. Brown's letter of [April 21, 1998 and] fully support her treatment plan."

The defendant appealed from the decision of the commissioner to the compensation review board (board). On appeal to the board, the defendant did not contest the compensability of the plaintiff's work-related physical injury, namely, the cardiovascular disorder. Rather, the defendant claimed, inter alia, that the plaintiff's preexisting psychiatric condition, namely, the post-traumatic stress disorder, did not arise from a physical injury and, therefore, that, in accordance with § 31-275 (16) (B) (ii), the preexisting psychiatric condition was not compensable. The board affirmed the commissioner's decision, concluding that the commissioner properly determined that the symptoms of the plaintiff's cardiovascular disorder had exacerbated his preex-

ment by supervisors at his place of employment. He has met with repeated obstacles in his attempts to pursue his legitimate complaints through the appropriate channels.

"As a result of the chronic stress, [the plaintiff's] physical and emotional well-being [has] been seriously compromised. He suffers from symptoms of depression, anxiety, and panic, which have been further exacerbated by the physical symptoms related to migraines, seizures, and cardiac spasms. Additionally, insomnia, nightmares, feelings of helplessness and victimization have interfered with his ability to live with a sense of personal safety and well-being.

"The racial harassment at work, coupled with extreme disregard for his physical well-being, directly contributed to a retriggering of the symptoms of Post-traumatic Stress Disorder. [The plaintiff] continually felt that his personal safety was compromised when he was repeatedly assigned to direct inmate contact after being undermined by his supervisors in front of the inmate population.

"At this point, my recommendation for treatment is that [the plaintiff] attend two sessions weekly with me, to be reviewed in three months for reassessment purposes with the goal of regaining his former level of functioning. . . ."

isting psychiatric condition and, therefore, that the pre-existing condition also was compensable.[7] The defendant appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant renews its claims that: (1) there is insufficient evidence to warrant a finding that the plaintiff's post-traumatic stress disorder was exacerbated by his work-related cardiovascular disorder; and (2) the exacerbation of the plaintiff's psychiatric condition did not "[arise] from" his cardiovascular disorder within the meaning of § 31-275 (16) (B) (ii). The defendant further contends that, even if we conclude that the plaintiff is entitled to compensation for the aggravation of his preexisting psychiatric condition by a compensable, work-related physical injury, his right to such compensation is limited, under § 31-275 (1) (D), to "that proportion of the disability . . . due to the aggravation of the preexisting [psychiatric condition] as may be reasonably attributed to the injury upon which the claim is based . . . ."[8] General Statutes § 31-275 (1) (D). We reject the defendant's claims.

I

We first address the defendant's claim that the evidence adduced at the hearing before the commissioner

[7] Commissioner Jesse M. Frankl dissented from the majority opinion of the board. In his view, the plaintiff failed to adduce sufficient evidence to link the aggravation of the plaintiff's post-traumatic stress disorder to his cardiovascular disorder. Specifically, he concluded that Barron's one sentence note did not provide an adequate medical basis upon which to support a conclusion that the plaintiff's preexisting psychiatric condition had been aggravated by his work-related physical injury.

[8] On appeal, the defendant does not dispute the fact that the plaintiff's cardiovascular disorder is a compensable, work-related physical injury. Thus, for purposes of this appeal, it is undisputed that the plaintiff is entitled to workers' compensation benefits for the exacerbation of his preexisting psychiatric condition if: (1) the evidence is sufficient to support a finding that that condition was aggravated by his cardiovascular disorder; and (2)

was insufficient to support a finding that the plaintiff's preexisting psychiatric condition was aggravated by his work-related cardiovascular disorder. We reject the defendant's claim.

Before addressing the merits of the defendant's claim, we set forth the standards governing our review of decisions by the board. "[W]hen a decision of a commissioner is appealed to the [board], the [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the . . . [board] is similarly limited." (Citations omitted; internal quotation marks omitted.) *Biasetti* v. *Stamford*, 250 Conn. 65, 70–71, 735 A.2d 321 (1999). Furthermore, "[i]t matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted. . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and [the commissioner's] choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citation omitted; internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 799, 669 A.2d 1214 (1996).

Applying these principles to the facts of this case, we conclude that there is sufficient evidence in the record from which the commissioner reasonably could

the aggravation of a preexisting psychiatric condition by a work-related physical injury is compensable notwithstanding § 31-275 (16) (B) (ii).

have concluded that the plaintiff's preexisting psychiatric condition was aggravated by his cardiovascular disorder. The plaintiff's therapist, Brown,[9] stated in her letter that she had treated the plaintiff for post-traumatic stress disorder since 1994. She also indicated that the plaintiff suffers from depression, anxiety and panic. Although Brown did not expressly link those symptoms to the plaintiff's post-traumatic stress disorder, it was reasonable for the commissioner to have inferred that those are the symptoms for which the plaintiff had sought treatment. Moreover, the reasonableness of this inference is buttressed by the fact that the symptoms of post-traumatic stress disorder include, inter alia, despair or hopelessness and increased risk of panic disorder. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) p. 425. Brown also stated that the plaintiff's symptoms had been exacerbated by, among other things, his "cardiac spasms,"[10] which resulted from his work-related cardiovascular disorder. Furthermore, the commissioner reasonably could have found that the note from Barron, a psychiatrist, in which Barron "completely concur[red]" with Brown's diagnosis and treatment plan, provided adequate medical confirmation of that diagnosis. In view of the substantial deference that must be accorded the fact-finding role of the commis-

---

[9] Brown is licensed to practice clinical social work in accordance with the requirements of General Statutes § 20-195n. "Clinical social work" is defined as "the application, by persons trained in social work, of established principles of psychosocial development, behavior, psychopathology, unconscious motivation, interpersonal relationships and environmental stress to the evaluation, assessment, diagnosis and treatment of biopsychosocial dysfunction, disability and impairment, including mental, emotional, behavioral, developmental and addictive disorders, of individuals, couples, families or groups. Clinical social work includes, but is not limited to, counseling, psychotherapy, behavior modification and mental health consultation." General Statutes § 20-195m (4).

[10] It reasonably can be inferred that, when Brown was referring to "cardiac spasms," she was referring to the spasms in the coronary arteries that resulted in the plaintiff's angina. See footnote 2 of this opinion.

sioner, we conclude that the evidence is sufficient to permit a finding that the plaintiff's preexisting post-traumatic stress disorder was exacerbated by his work-related cardiovascular disorder.[11]

## II

We next consider the defendant's claim that § 31-275 (16) (B) (ii), which bars compensation for a mental or emotional impairment "unless [that] impairment *arises from* a physical injury or occupational disease"; (emphasis added) General Statutes § 31-275 (16) (B) (ii); precludes compensation for the aggravation of a preexisting, nonwork-related psychiatric condition. Specifically, the defendant maintains that a mental impairment does not *arise from* a physical injury unless that mental impairment *originates* from the work-related physical injury. Under the defendant's interpretation of § 31-275 (16) (B) (ii), the plaintiff would not be entitled to compensation for the exacerbation of his post-traumatic stress disorder because that mental impairment did not originate from his work-related cardiovascular disorder. The plaintiff contends that when the aggravation of a preexisting psychiatric condition is a direct consequence of a work-related physical injury, as in the present case, the aggravation of the psychiatric condition is, itself, a sufficiently distinct and identifiable injury to constitute an "impairment" that "arises from" the compensable work-related physical injury. General Statutes § 31-275 (16) (B) (ii). We agree with the plaintiff.

"The dispute between the parties [regarding compensability of the exacerbation of the plaintiff's preexisting

---

[11] We acknowledge that the evidence presented by the plaintiff with respect to the causal link between the exacerbation of his preexisting psychiatric condition and his work-related cardiovascular disorder is not strong. We nevertheless are persuaded, for the reasons set forth in the text of this opinion, that the evidence is minimally sufficient to warrant the commissioner's factual finding in regard to that causal relationship.

psychiatric condition] raises an issue of statutory construction. Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory [interpretation], our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Polizos* v. *Nationwide Mutual Ins. Co.*, 255 Conn. 601, 607, 767 A.2d 1202 (2001).

Our starting point is the pertinent statutory language.[12] Under § 31-275 (16) (B) (ii), a mental impair-

[12] We recently had occasion to construe § 31-275 (16) (B) (ii) in *Biasetti* v. *Stamford*, supra, 250 Conn. 65. In *Biasetti*, we concluded that the plaintiff, a police officer who suffered from work-related post-traumatic stress disorder, was not entitled to workers' compensation benefits for that psychiatric condition. Id., 67. The plaintiff in *Biasetti* had been involved in a work-related high speed chase and gun battle. As a result of these events, he developed post-traumatic stress disorder, the physical symptomatology of which included dizzy spells and headaches. See id., 68–69. Although we held that the specific type of post-traumatic stress disorder with which the plaintiff was diagnosed is an occupational disease within the meaning of General Statutes § 31-275 (15); id., 74; we concluded that the plaintiff was not entitled to workers' compensation benefits because the physical sequelae of the plaintiff's post-traumatic stress disorder were a consequence of that impairment rather than a separate and distinct personal injury or occupational disease. See id., 79–80, 82. We explained: "Section 31-275 (16) (B) (ii) includes within the definition of 'personal injury' an emotional impairment that *arises from* or is caused by a physical injury or occupational disease. It does not, however, extend coverage to an emotional impairment *which itself is* an occupational disease. To conclude otherwise would be to ignore the causation requirement encompassed within the term 'arises.' " (Emphasis in original.) Id., 79. The present case presents an entirely different issue, namely, whether § 31-275 (16) (B) (ii) precludes an award of compensation to a plaintiff whose preexisting psychiatric condition has been aggravated by a work-related physical injury.

ment is compensable if it "arises from" a work-related physical injury, in this case, the plaintiff's cardiovascular disorder. As the defendant asserts, the term "arises from" is synonymous with "originates from," or "caused by." See *Biasetti* v. *Stamford*, supra, 250 Conn. 79. The crux of the issue, however, is not the precise meaning of the term "arises from," but whether, for purposes of § 31-275 (16) (B) (ii), the term "mental or emotional impairment" includes the aggravation or exacerbation of a preexisting psychiatric condition. Although a strict reading of the statute arguably favors the interpretation advanced by the defendant, we believe that the plaintiff's construction also is entirely plausible. We are persuaded, moreover, that the plaintiff's construction is more consistent with the underlying purpose and intent of the Workers' Compensation Act and, therefore, the better construction.

Under the plaintiff's interpretation of § 31-275 (16) (B) (ii), the aggravation of a preexisting psychiatric condition, in order to be compensable, must have been the result of a work-related physical injury. In other words, the work-related physical injury must be a "but for" cause of the aggravation of the preexisting psychiatric condition. It long has been a "fundamental tenet of workers' compensation law . . . that an employer takes the employee in the state of health in which it finds the employee." *Epps* v. *Beiersdorf, Inc.*, 41 Conn. App. 430, 435, 675 A.2d 1377 (1996), citing *Cashman* v. *McTernan School, Inc.*, 130 Conn. 401, 409, 34 A.2d 874 (1943). We agree with the plaintiff that the burden falls upon the employer to establish a departure from this general rule of compensability, especially because we eschew a narrow and technical reading of our workers' compensation statutes in favor of one that promotes compensability. See, e.g., *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 483, 650 A.2d 1240 (1994) (remedial purpose of Workers' Compensation Act

should not be defeated by narrow and technical construction); *Szudora* v. *Fairfield*, 214 Conn. 552, 557, 573 A.2d 1 (1990) ("workers' compensation legislation . . . should be broadly construed in favor of disabled employees").

In addition, the legislature's use of the term "impairment" supports the conclusion that § 31-275 (16) (B) (ii) does not preclude compensability insofar as a preexisting psychiatric condition has been exacerbated by a work-related physical injury. "Impairment" is defined as "the act of impairing or the state of being impaired"; Webster's Third New International Dictionary; and "impair" means "to make worse: diminish in quantity, value, excellence, or strength: do harm to . . . ." Id.[13] To the extent that the term "impairment" suggests a condition that has worsened or deteriorated, that connotation is consistent with a reading of § 31-275 (16) (B) (ii) that does not exclude from its purview the deterioration, or exacerbation, of a preexisting condition.

Finally, our interpretation of § 31-275 (16) (B) (ii) is guided by the "principles underlying Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose." (Internal quotation marks omitted.) *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 604–605, 748 A.2d 278 (2000); see also *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 137 n.16, 717 A.2d 747 (1998) (Workers' Compensation Act "must be construed liberally to effectuate its beneficent purpose"). The "humani-

---

[13] "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." (Internal quotation marks omitted.) *State* v. *Rivera*, 250 Conn. 188, 200 n.12, 736 A.2d 790 (1999).

tarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." *Herman* v. *Sherwood Industries, Inc.*, 244 Conn. 502, 511, 710 A.2d 1338 (1998). We, therefore, "do not construe the act to impose limitations on benefits that the act itself does not specify clearly." Id., 512; accord *Gil* v. *Courthouse One*, 239 Conn. 676, 703 n.13, 687 A.2d 146 (1997). Finally, "[i]n appeals arising under workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." *Doe* v. *Stamford*, 241 Conn. 692, 698, 699 A.2d 52 (1997); accord *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 221, 752 A.2d 1069 (2000). In light of these well established and oft repeated principles, and particularly because § 31-275 (16) (B) (ii) does not clearly purport to bar compensation for the aggravation of a preexisting psychiatric condition by a work-related physical injury, we conclude that the plaintiff is entitled to such compensation.

The defendant asserts that the pertinent legislative history supports its position that the plaintiff is not entitled to benefits based on the provisions of § 31-275 (16) (B) (ii). As the defendant notes, the legislature reformed the workers' compensation laws in 1993 with a fundamental purpose of "effect[ing] a dramatic decrease in the cost of workers' compensation in Connecticut." 36 H.R. Proc., Pt. 18, 1993 Sess., p. 6145, remarks of Representative Michael P. Lawlor. To reduce the cost of workers' compensation, the legislature introduced a number of systemic changes, including a reduction in the rate of compensation, the elimination of certain cost-of-living adjustments and a reduction in the number of compensable injuries. See generally Public Acts 1993, No. 93-228. In particular, the provisions of § 31-275 (16) (B) were enacted to limit, inter alia, the number of compensable claims for mental or emotional

impairments. Cf. *Biasetti* v. *Stamford,* supra, 250 Conn. 75. Benefits for such impairments, however, were not eliminated entirely. Under § 31-275 (16) (B) (ii), an employee who suffers from a mental or emotional impairment that "arises from a physical injury or occupational disease" still is entitled to compensation for that impairment. General Statutes § 31-275 (16) (B) (ii). The question, therefore, is how far did the legislature intend to go in eliminating compensation for mental and emotional impairments.

We are not persuaded that the legislative goal of reducing the cost of workers' compensation militates strongly in favor of the statutory interpretation that the defendant would have us adopt. It is doubtful that requiring coverage for claims like the one at issue in this case will place an unreasonable financial burden on employers because such claims are not likely to be especially large in number or in cost. Thus, compensating an employee for the exacerbation of a preexisting mental or emotional condition that was caused by a work-related physical injury furthers the beneficent purposes of the Workers' Compensation Act—claimants will receive benefits for work-related injuries that traditionally have been compensable under our statutory scheme—without undermining the legislature's effort to reduce workers' compensation costs. Mindful of the liberality with which we are to construe our Workers' Compensation Act to accomplish its remedial purpose, we conclude that the plaintiff is entitled to compensation for the aggravation of his post-traumatic stress disorder arising from his work-related cardiovascular disorder.

### III

Finally, we must determine the proper compensation for the aggravation of the plaintiff's post-traumatic stress disorder. General Statutes § 31-275 (1) (D) pro-

vides that, "for aggravation of a preexisting disease, compensation shall be allowed only for that proportion of the disability . . . due to the aggravation of the preexisting disease as may be reasonably attributed to the injury upon which the claim is based . . . ." At oral argument, the plaintiff conceded that any benefits to which he was entitled were subject to this limitation. Thereafter, however, the plaintiff sought to rescind his concession in light of *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 401,[14] in which this court held that the foregoing statutory language[15] applies only to the aggravation of preexisting *occupational diseases*. Id., 408; see also *Glenn* v. *Stop & Shop, Inc.*, 168 Conn. 413, 419–20, 362 A.2d 512 (1975). Under *Cashman*, the apportionment limitation of § 31-275 (1) (D) is inapplicable to the plaintiff because his preexisting post-traumatic stress disorder is not an occupational disease, that disorder having arisen from events unrelated to the plaintiff's employment.

It may be that the comprehensive 1993 legislative reform of the Workers' Compensation Act; see generally Public Acts 1993, No. 93-228; casts doubt on our holding in *Cashman*, especially in regard to diseases, such as mental or emotional impairments, for which the legislature has sought to limit compensability. The parties, however, did not address that issue until after the opin-

---

[14] This claim was the subject of an October 4, 2001 motion in which the plaintiff sought our reconsideration of our initial decision in this case. See *Gartrell* v. *Dept. of Correction*, 258 Conn. 137, 779 A.2d 124 (2001). We granted the plaintiff's motion for reconsideration on December 17, 2001.

[15] The court in *Cashman* was interpreting General Statutes (1930 Rev.) § 5223; see *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 403–404; which contained language identical in all material respects to the relevant language in § 31-275 (1) (D). See General Statutes (1930 Rev.) § 5223 ("[i]n the case of aggravation of a pre-existing disease, compensation shall be allowed only for such proportion of the disability or death due to the aggravation of such pre-existing disease as may be reasonably attributed to the injury upon which the claim is based").

ion in this case initially was released,[16] and, consequently, this court has not received the full benefit of adversarial argument regarding that issue. Thus, we are not persuaded that the present case is an appropriate one for reconsideration of our holding in *Cashman.* We, therefore, conclude that the compensation to which the plaintiff is entitled is not limited by the apportionment provisions of § 31-275 (1) (D).[17]

The decision of the board is affirmed.

In this opinion the other justices concurred.

---

[16] Specifically, the parties did not address this issue until after our initial decision in this case had been published in the Connecticut Law Journal on September 25, 2001. *Gartrell* v. *Dept. of Correction,* 258 Conn. 137, 779 A.2d 124 (2001).

[17] We intimate no view as to how we may resolve any future claim challenging our holding in *Cashman* in light of the 1993 revisions to the Workers' Compensation Act or for any other reason.