******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELIZABETH HADDEN *v.* CAPITOL REGION
EDUCATION COUNCIL ET AL.
(AC 36913)

DiPentima, C. J., and Gruendel and Harper, Js.*

*Argued December 10, 2015—officially released March 22, 2016*

(Appeal from Workers' Compensation Review Board.)

*Phyllis M. Pari*, with whom, on the brief, were *Kristen Sotnik Falls*, *Christopher Foley* and *Lisa A. Bunnell*, for the appellants (named defendant et al.).

*Richard T. Stabnick*, with whom was *Courtney C. Stabnick*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant Capitol Region Education Council[1] appeals from a decision of the Workers' Compensation Review Board (board) that both (1) upheld an award by the Workers' Compensation Commissioner (commissioner) of temporary total disability benefits to the defendant's employee—the plaintiff, Elizabeth Phelps Hadden—for her ongoing total disability since she was injured at work in 2010; and (2) denied the defendant's request, pursuant to General Statutes § 31-275 (1) (D),[2] to reduce the plaintiff's award in proportion to the percentage of her disability caused not by the work injury's aggravation of her preexisting condition, but by the natural progression of that condition. On appeal, the defendant concedes that the plaintiff's work injury caused her total disability, entitling her to benefits, and challenges only the denial of apportionment pursuant to § 31-275 (1) (D).[3] On that issue, we conclude that we are bound by our Supreme Court's holding in *Cashman* v. *McTernan School, Inc.*, 130 Conn. 401, 34 A.2d 874 (1943), which expressly forbids apportionment if the preexisting condition was nonoccupational, as is the plaintiff's condition here. Accordingly, we affirm the decision of the board.[4]

The commissioner found the following facts. During the fall of 2010, the defendant employed the plaintiff as a physical education teacher at the Metropolitan Learning Center for Global International Studies, a magnet school in Bloomfield. On October 8, 2010, the plaintiff drove to work and taught her classes for the day. After class, the plaintiff was walking over to open the girls locker room when someone told her that two students were fighting. The plaintiff went to break up the fight. When the plaintiff arrived at the fight, she got on top of one of the students to protect him from being hit by the other student. The other student punched the plaintiff in the jaw, causing the plaintiff to fall backward and hit her head. The plaintiff sustained a traumatic brain injury. After breaking up the fight, the plaintiff had difficulty walking. The school nurse came with a wheelchair and brought the plaintiff to the nurse's office. The plaintiff had a severe headache and was vomiting. She was taken by ambulance to the hospital, where she was intubated to control the muscle spasms that developed. The plaintiff remained in the hospital for nine weeks. As a result of the injury, the plaintiff was rendered totally disabled. The plaintiff has been unable to work since that time.

After the injury, the plaintiff filed a workers' compensation claim for temporary total disability benefits. The defendant contested that claim. The commissioner held seven days of formal hearings—spanning June 30, 2011 to September 18, 2012—concerning the plaintiff's work injury and ensuing total disability. The core dispute was whether, as the plaintiff argued, the October 8, 2010

punch had aggravated the plaintiff's preexisting multiple sclerosis, causing her total disability; or whether, as the defendant argued, the punch had merely dislocated the plaintiff's jaw, with her total disability resulting instead from the natural progression of her preexisting multiple sclerosis.[5]

At the hearings, the plaintiff submitted the deposition testimony of two medical witnesses. Matthew Raymond, an osteopathic physiatrist, testified that the plaintiff had suffered a traumatic brain injury on October 8, 2010, and that it had exacerbated her multiple sclerosis. Peter Wade, the plaintiff's primary treating physician for her multiple sclerosis, testified to similar effect. Both Raymond and Wade testified that the punch to the face on October 8, 2010, was a substantial factor in causing the plaintiff's total disability.

The defendant submitted the testimony of one medical witness. Kimberlee Sass, a neuropsychologist, testified at the hearing that various studies had concluded that traumatic brain injuries played no role in exacerbating multiple sclerosis, and that in any case he believed that the plaintiff had not suffered a traumatic brain injury when she was punched on October 8, 2010. The defendant also submitted the report of Joseph Guarnaccia, a neurologist at Griffin Hospital, who opined that "[i]t [was] substantially probable that the trauma [the plaintiff] experienced in October of 2010, triggered a relapse of her multiple sclerosis" but that "the trauma itself was not severe enough to cause a traumatic brain injury" and that the relapse was "similar to her previous relapses in terms of her neurological dysfunction."

At the close of evidence, both parties submitted posttrial briefs to the commissioner in which they summarized the arguments they had made over the course of the hearings. In its posttrial brief, the defendant also raised the issue of apportionment under § 31-275 (1) (D) for the first time, arguing that if the commissioner found in favor of the plaintiff on compensability, he should then decide what portion of the plaintiff's total disability was caused by the work injury's aggravation of her preexisting multiple sclerosis and what portion of her disability was caused by the disease's natural progression, holding the defendant liable only for the portion of the plaintiff's current total disability attributable to aggravation by the work injury. The defendant acknowledged in its brief that apportionment under § 31-275 (1) (D) was expressly foreclosed by our Supreme Court's decision in *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 407–408, which held that the predecessor of § 31-275 (1) (D) allowed apportionment only if the preexisting disease was occupational— here, it was undisputed that the plaintiff's preexisting multiple sclerosis was not occupational.

The commissioner rendered a decision on May 3, 2013. He ruled in favor of the plaintiff on compensabil-

ity, finding that she "suffered a physical compensable injury" and a "compensable Traumatic Brain Injury" on October 8, 2010. He found that "said incident made the [plaintiff's] condition materially and substantially worse than it was" and that it "aggravated, in a material and substantial manner, her physical condition and thus her current need for treatment is causally related to her injury of October 8, 2010." He concluded that "the [plaintiff] is Temporarily Totally Disabled from the date of injury to the present, and continuing, based on the October 8, 2010 workplace injury." Although the commissioner did not expressly discuss apportionment, he "award[ed] all claims for benefits submitted by the [plaintiff] in this particular matter."[6] Finally, the commissioner ordered that "[t]he issue of the [plaintiff's] average weekly wage/basic compensation rate and other issues not yet resolved are to be heard at a future hearing to be scheduled by the Commissioner."[7]

Shortly after that decision, the defendant filed a motion to correct, asking the commissioner to make ninety-eight additional findings of fact about the plaintiff's medical history before the injury and its role in causing her total disability after the injury. The commissioner denied the defendant's motion in full. The defendant then appealed from the commissioner's decision to the board, arguing that the commissioner erred in (1) finding that the plaintiff's October 8, 2010 work injury caused her total disability after that date; (2) holding that the defendant was not entitled to apportionment pursuant to § 31-275 (1) (D); and (3) denying the defendant's motion to correct.

The board rendered its decision on May 20, 2014. It affirmed the commissioner's judgment on all three counts, holding that (1) the commissioner was entitled to believe the plaintiff's witnesses over the defendant's on the issue of whether the plaintiff's October 8, 2010 work injury caused her total disability after that date; (2) the commissioner properly denied apportionment, both because (a) the defendant had waived the right to seek apportionment when it failed to present evidence at the hearings of what percentage of the plaintiff's disability should be apportioned to the natural progression of her preexisting multiple sclerosis versus aggravation caused by the October 8, 2010 punch, and (b) on the merits, *Cashman* precluded apportionment; and (3) the commissioner "was legally empowered to deny" the defendant's motion to correct because it "appear[ed] to be an effort to reargue the factual evidence . . . ." The defendant appealed to this court.

In the present appeal, the defendant concedes that the plaintiff's October 8, 2010 work injury was a substantial factor in causing her total disability after that date, entitling the plaintiff to benefits, but argues that the board erred in denying apportionment of those benefits pursuant to § 31-275 (1) (D). We disagree.

As the defendant acknowledges, our Supreme Court's decision in *Cashman* forbids a defendant from seeking apportionment under § 31-275 (1) (D) if the preexisting disease that was aggravated was not occupational. *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 407–408. In *Cashman*, "[t]he [defendant] claimed that the [plaintiff's] award should be reduced under the predecessor to General Statutes § 31-275 (1) (D), which limits compensation for aggravation of a preexisting disease to the proportion of the disability attributable to the injury on which the workers' compensation claim is based. This court rejected that claim and concluded that the statute only required a reduction of benefits for preexisting *occupational* diseases." (Emphasis in original.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 554, 108 A.3d 1110 (2015).

The Supreme Court has questioned *Cashman*, but has not overruled it. Compare *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 44–45, 787 A.2d 541 (2002) ("It may be that the comprehensive 1993 legislative reform of the Workers' Compensation Act; see generally Public Acts 1993, No. 93-228; casts doubt on our holding in *Cashman*, especially in regard to diseases, such as mental or emotional impairments, for which the legislature has sought to limit compensability. . . . [Nevertheless] we are not persuaded that the present case is an appropriate one for reconsideration of our holding in *Cashman*. We, therefore, conclude that the compensation to which the plaintiff is entitled is not limited by the apportionment provisions of § 31-275 (1) (D)." [Footnote omitted.]), with *Sullins* v. *United Parcel Service, Inc.*, supra, 315 Conn. 553–54, 559–60 (continuing to cite *Cashman* with approval).

"[I]t is manifest to our hierarchical judicial system that [our Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [Supreme Court] precedent." *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010). "As an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court." *State* v. *Fuller*, 158 Conn. App. 378, 387 n.6, 119 A.3d 589 (2015). Because the defendant concedes that the plaintiff's preexisting multiple sclerosis was not occupational, we are bound by our Supreme Court's holding in *Cashman* that a nonoccupational preexisting disease does not entitle a defendant to apportionment under § 31-275 (1) (D).

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Two additional defendants—the Workers' Compensation Trust, which serves as the third party administrator of Capitol Region Education Council's self-insured workers' compensation program, and Prosight Specialty Insurance—also appeared before the Workers' Compensation Review Board and

are parties on appeal to this court. For ease of reference, we refer to Capitol Region Education Council as the defendant.

[2] General Statutes § 31-275 (1) (D) provides: "For aggravation of a preexisting disease, compensation shall be allowed only for that proportion of the disability or death due to the aggravation of the preexisting disease as may be reasonably attributed to the injury upon which the claim is based . . . ."

[3] We do not consider the defendant's claim for apportionment under the rule announced in *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 953 A.2d 13 (2008), because the defendant did not raise that claim before the commissioner. In *Deschenes*, the plaintiff had two diseases—one occupational and one not—which developed concurrently during the plaintiff's employment and combined to render him permanently partially disabled. Id., 306–309. Our Supreme Court held that this fact pattern fell within a "statutory gap" between § 31-275 (1) (D), which entitled a plaintiff to full benefits if a work injury aggravated a *prior* nonoccupational disease, resulting in disability, and General Statutes § 31-349 (a), which entitled a plaintiff to full benefits if a work injury combined with a *prior* disability to yield a greater disability. Id., 312–14. The court held that for *concurrently* developing occupational and nonoccupational diseases, a defendant was entitled to apportionment, and a plaintiff's benefits should be reduced in proportion to the percentage of the plaintiff's disability caused by the nonoccupational disease. Id., 321.

Here, the defendant did not cite *Deschenes* before either the commissioner or the board and expressly disavowed any reliance on *Deschenes* in its primary appellate brief to this court, arguing that the case was "inapposite to this appeal." "The [defendant] did not bring [its] asserted [claim] to the attention of the commissioner; therefore, [it] did not preserve [the claim]." *Abbotts* v. *Pace Motor Lines, Inc.*, 106 Conn. App. 436, 437 n.2, 942 A.2d 505, cert. denied, 287 Conn. 910, 950 A.2d 1284 (2008); see also *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 432, 28 A.3d 347 (2011) ("[T]he [defendant] failed to raise this issue before either the commissioner or the board. As a general matter, we do not decide issues raised for the first time on appeal." [Footnote omitted.]). Accordingly, we do not review the defendant's claim for apportionment under the rule announced in *Deschenes*.

[4] The defendant properly raised two other issues on appeal to this court: (1) that the board erred in finding that the defendant had waived its claim for apportionment; and (2) that the board erred in denying the defendant's motion to correct. As to the first issue, waiver, we do not address it because we conclude that even if the defendant's apportionment claim was preserved properly, *Cashman* clearly disposes of it on the merits. As to the second issue, "a motion to correct is properly denied when the additional findings sought by the movant would not change the outcome of the case." *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 222, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). Here, the defendant's ninety-eight additional proposed findings of fact would not render *Cashman* any less binding and so would not change the outcome of the case. The board thus properly affirmed the denial of the defendant's motion to correct.

[5] The defendant never contested liability for the plaintiff's dislocated jaw and other facial injuries suffered as a direct result of the punch.

[6] The effect of awarding "*all* claims for benefits" was to deny the defendant's request that the commissioner award only reduced benefits. (Emphasis added.) Cf. *Bennett* v. *Agricultural Ins. Co.*, 51 Conn. 504, 510 (1884) ("[t]he [ruling], by ignoring entirely the point of the defendant's request, was in effect a denial of its correctness").

[7] We note that there is no final judgment requirement for workers' compensation appeals. General Statutes § 31-301b.