## JOHN W. SULLINS *v.* UNITED PARCEL SERVICE, INC., ET AL.
### (AC 34231)

DiPentima, C. J., and Robinson and Lavery, Js

Argued January 2—officially released October 1, 2013

*Robert F. Carter*, with whom was *Nancy L. Meyer*, for the appellant (plaintiff).

*Nancy S. Rosenbaum*, for the appellees (defendants).

*Opinion*

LAVERY, J. The plaintiff, John W. Sullins, appeals from the decision of the Workers' Compensation Review Board (board), affirming the decision of the Workers' Compensation Commissioner for the First

District (commissioner) that compensation for the plaintiff's 44 percent impairment to his bilateral upper extremities and 40 percent impairment to his hands should be apportioned,[1] so that the defendants, United Parcel Service, Inc. (UPS), and its insurer, Liberty Mutual Insurance Co., shall pay only for the 10 percent of each disability attributed to the plaintiff's occupational injuries. The plaintiff claims that the board concluded incorrectly that the facts of this case fell within the holding in *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 306, 953 A.2d 13 (2008), in which our Supreme Court held that apportionment is appropriate where a plaintiff suffers from a disability caused by two concurrently developing disease processes, one of which is occupational and one of which is nonoccupational, and the conditions of the claimant's occupation have no influence on the development of the nonoccupational disease. We agree with the plaintiff, and, therefore, we reverse the decision of the board.

The record reveals the following facts, either undisputed or as found by the commissioner, and procedural history. The plaintiff worked for UPS, unloading trucks and sorting small parts, for approximately thirty-two years. The plaintiff was diagnosed with diabetes in 1987 and with diabetic neuropathy in 1998.[2] The diabetic neuropathy caused impairment to his arms and hands, including weakness and tingling in the plaintiff's hands as well as difficulty in grasping things. On March 5, 2003, the plaintiff suffered injuries to his upper arms and hands as the result of a work related accident. He received medical treatment, including surgeries, and

---

[1] In discussing apportionment, we refer in this opinion to the reduction of a claimant's benefits based on the degree of disability attributable to a work related cause, rather than allocation of responsibility for compensation among different employers. See *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 306 n.1, 953 A.2d 13 (2008).

[2] Neuropathy is a loss of nerve function characterized by loss of sensation, numbness or loss of motor control.

returned to his job duties without restrictions until he retired in 2008. By agreement of the parties, after his original treating physician retired, the plaintiff was examined by Richard Linburg, an arthroscopic hand surgeon, on January 5, 2010. In his report of January 5, 2010, Linburg assigned a disability rating of 44 percent permanent partial impairment to the plaintiff's bilateral upper extremities (arms) and 40 percent permanent partial impairment to the plaintiff's hands. These ratings were not in dispute. Linburg attributed 10 percent of the 44 percent impairment of the plaintiff's arms to work related cubital tunnel syndrome and the surgery used to treat it, and 10 percent of the 40 percent impairment of his hands to work related carpal tunnel syndrome and the surgery used to treat it.[3] Linburg also opined that the plaintiff's occupation and work activities had no influence on the development of the nonoccupational disease to his arms and hands.

The plaintiff's claim for benefits pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq., was heard on July 13, 2010, during a formal hearing before the commissioner. The commissioner heard oral argument on July 21, 2010, and issued his finding and award on December 7, 2010. The commissioner found that: (1) "[t]he [plaintiff's] diabetic neuropathy is an independent and nonoccupational developing disease process affecting his arms and hands"; (2) "[t]he [plaintiff's] occupation/work activities had no influence in the development of the nonoccupational disease to his arms and hands"; and (3) "[a]s a result, and pursuant to *Deschenes* . . . the [plaintiff] is entitled to receive 10 [percent] permanent partial disability benefits to his bilateral upper extremities and 10 [percent] permanent partial disability benefits to his

---

[3] Carpal and cubital tunnel syndromes are compression of the medial nerve in the wrist and the ulnar nerve in the elbow, respectively. Each can cause pain and neuropathy.

bilateral hands, less credits for permanency benefits previously paid on these body parts." The commissioner issued an order consistent with that finding.

The plaintiff then filed a motion to correct the commissioner's findings, seeking an order that the disability not be apportioned and, among other corrections, that the commissioner strike subparagraph (K), which referred to the plaintiff's permanent disability resulting from "a combination of two concurrent disease processes, one of which is nonoccupational, the diabetic neuropathy . . ." and subparagraph (R), which read: "The [plaintiff's] diabetic neuropathy is an independent and nonoccupational developing disease process affecting his arms and hands." In place of subparagraph (R), the plaintiff sought to have the commissioner substitute the following: "The [plaintiff's] diabetic neuropathy is a pre-existing condition pursuant to [General Statutes] § 31-349 (a)." The commissioner denied the motion in its entirety. The plaintiff then appealed the commissioner's decision to the board.

The board concluded that the facts found by the commissioner were similar to those found in *Deschenes*, and that, because *Deschenes* also applied to previous disabilities, § 31-349 (a) did not apply.[4] Accordingly,

---

[4] General Statutes § 31-349 (a) provides: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation."

the board affirmed the commissioner's decision. This appeal followed.

On appeal to this court, the plaintiff claims that (1) the board incorrectly applied the holding in *Deschenes* to the facts of this case, (2) the board improperly upheld the commissioner's award because he failed to find that the plaintiff's diabetic neuropathy was a previous disability under § 31-349, (3) the defendants failed to prove, as required by *Deschenes*, that the plaintiff's diabetic neuropathy and work related cubital tunnel and carpal tunnel conditions were "concurrently developing," and (4) the board improperly upheld the commissioner's award even though he failed to make findings of fact necessary to apply the *Deschenes* rule. Because these claims are interrelated, we address them together.[5]

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 388, 10 A.3d 20 (2010). "Neither the . . . board nor this court has the power to retry facts." (Internal quotation marks omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006).

The primary dispute between the parties is whether the holding in *Deschenes* applies to this claim. In

---

[5] The plaintiff also claims that the defendants failed to prove, as required by *Deschenes*, that his work related injuries met the definition of an occupational disease. Because we conclude elsewhere in this opinion that *Deschenes* does not apply to the facts of this case, we decline to address this claim.

*Deschenes*, the plaintiff had been exposed to asbestos as part of his job as an insulator, which he started at age twenty-two. *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 306. The plaintiff had also smoked cigarettes since age seventeen or eighteen, and started smoking one and one-half packs per day from age twenty-five to age forty-six. Id., 307. He was diagnosed with asbestos-related pleural lung disease in 1994, and also developed emphysema over the same time period. Id. Both diseases caused impairment to his lungs, and the board ruled that liability should not be apportioned between the smoking-related emphysema and the work related pleural lung disease. Id., 309. The board concluded that "smoking-related emphysema need not be treated separately for the purpose of assigning liability for the lung permanency, and there is no legal remedy that allows those employers to avoid liability for whatever portion of the claimant's lung impairment might be traceable to nonwork related emphysema, insofar as it was one of two conditions that combined to cause a single impairment." (Internal quotation marks omitted.) Id., 322.

On appeal, our Supreme Court overturned the board's decision because the act did not address the situation that the board described. Id., 314–15. In its analysis, the court noted that the commissioner in *Deschenes* "did not find that the plaintiff's emphysema was a 'previous disability' and that the asbestos exposure was a 'second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone,' which would have entitled him to full compensation under . . . § 31-349 (a)." Id., 313. The court noted that, "[i]nstead, the question presented here, namely, whether the act requires the apportionment of benefits when a disability is caused by two

separate, but concurrently developing medical conditions, only one of which is occupational in nature, is one of first impression for Connecticut's appellate courts that requires us to fill a gap in our statutes." Id., 313–14.

After exploring how other jurisdictions had resolved similar cases, the court stated the following rule to fill that statutory gap: "[A]pportionment . . . of permanent partial disability benefits is appropriate when a respondent employer is able to prove that: (1) a disability has resulted from the combination of two concurrently developing disease processes, one that is nonoccupational, and the other that is [work related]; and (2) the conditions of the claimant's occupation have no influence on the development of the nonoccupational disease. In our view, this conclusion is consistent with the legislature's treatment of the aggravation of preexisting injuries under [General Statutes] § 31-275 (1) (D), and second injuries under § 31-349 (a), in that it accommodates two axiomatic principles of workers' compensation law, namely, that to be compensable, the injury must arise out of and occur in the course of the employment, and also that an employer takes the employee in the state of health in which it finds the employee." (Footnotes omitted; internal quotation marks omitted.) Id., 321–22.

In the present case, the plaintiff argues that uncontroverted evidence in the record, as well as the commissioner's own findings, show that the impairment caused by the plaintiff's diabetic neuropathy was a previous disability, and because it was, it could not have also been a concurrently developing disease process. As a result, it would not satisfy the first prong of the *Deschenes* rule. The defendants assert, and the board concluded, that the holding in *Deschenes* also may apply

where the nonoccupational disease is a previous disability as long as the work related disease acts independently and does not affect the development of the nonoccupational disease. The board based its conclusion on the following statement by the court in *Deschenes*: "Put differently, apportionment or reduction of permanent partial disability benefits is appropriate only in those cases wherein different diseases, one of which is occupational in nature, have combined to cause, in effect, two different disabilities, even if they ultimately affect the same bodily part or function." Id., 322–23.

We agree with the plaintiff. Considered in isolation, the language from *Deschenes* that the defendants cite would appear to support their position. To consider it alone, however, overlooks the explicit distinction that the court made earlier in its decision between permanent disabilities caused by concurrently developing disease processes and those resulting from the combination of effects from a previous disability and from a second injury. Id., 313. In making that distinction, the court unequivocally stated that the latter situation would fall under § 31-349 (a). By using the word "and" in its holding; see id., 321; our Supreme Court made clear that to justify apportionment, the disability must meet both prongs of the test in *Deschenes*, meaning that in addition to showing that the work related injury did not exacerbate the nonoccupational disease, the two diseases must develop concurrently. Id.; see also id., 313 n.10, discussing *Strong* v. *United Technologies Corp.*, No. 4563 CRB 1-02-8 (August 25, 2003) ("This is not, however, the first time that this issue has arisen in our state. . . . Despite the fact that the record [in *Strong*] contained 'medical evidence to support the existence of two concomitant disease processes rather than two consecutive disease processes,' the board declined to rule 'that the portion of the lung damage

that is due to the non-work related disease process is not [the employer's] responsibility under the law.' "). We conclude, therefore, that where a claimant has a previous disability, it cannot also be a concurrently developing condition, and the *Deschenes* rule would not apply.

The defendants argue instead that "[w]hat distinguishes a *Deschenes* situation from a typical [§] 31-349 case is that the work injury does not affect or aggravate the development of the nonoccupational condition." Such a circumstance is necessary to invoke the *Deschenes* rule, but it is not wholly determinative. *Deschenes* also requires that the conditions develop concurrently. *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 321. Section 31-349 (a) does not require the claimant's later, occupational injury to have increased his diabetic neuropathy in order for both to be compensable. Instead, § 31-349 (a) explicitly requires, in order for full compensation to be awarded, that the permanent disability be greater than it would be if the previous disability were not present.

In an earlier case, our Supreme Court defined a previous disability for the purpose of applying § 31-349, using language from elsewhere in the act. "Previous disability . . . is defined within [General Statutes] § 31-275 (20) as an employee's preexisting condition caused by the total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye resulting from accidental injury, disease or congenital causes, or other permanent physical impairment." (Emphasis omitted; internal quotation marks omitted.) *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 498, 677 A.2d 1356 (1996). "[W]e define 'disability,' for the purpose of § 31-349 (a), to refer to a claimant's physical impairment." Id., 499.

Applying the definitions in *Williams* to the present case, the plaintiff's disability is the physical impairment

that he suffers in the form of the loss of use of his hands and arms, not the diseases or injuries that led to that physical impairment. Accordingly, the commissioner's finding that "[t]he [plaintiff's] occupation/work activities had no influence in the development of the nonoccupational disease to his arms and hands," and any finding that the diabetic neuropathy was an independent disease process, have no legal relevance under § 31-349 (a).

There is no dispute that the plaintiff's occupational injuries did not play any role in increasing his diabetic neuropathy. The second prong of the *Deschenes* test is therefore satisfied. We thus turn to the first prong, which requires us to determine whether the two diseases also developed concurrently, or whether, instead, the nonoccupational disease was a previous disability under § 31-349. We conclude, for the reasons discussed herein, that the two diseases did not develop concurrently.

It is undisputed that the plaintiff's diabetic neuropathy and the resulting impairment to his hands and arms existed five years before his second injury. The defendants argue that the commissioner found that the plaintiff's diabetic neuropathy and his work related injuries were concurrently developing conditions. Linburg never testified, and the commissioner did not find, that the two conditions were "concurrently developing," as would be required for the employer to meet its burden of showing that the claimant's disability falls under the ambit of *Deschenes*. Instead, the commissioner found that Linburg testified "that the disability . . . of 44 percent and 40 percent . . . results from a combination of two concurrent disease processes." We understand this to mean that once the work related injury appeared, both diseases existed at the same time. The record is clear that they did not develop at the same time. We also note that Linburg testified during his deposition,

which testimony the commissioner credited, that the diabetic neuropathy was preexisting.[6] To the extent that the commissioner's reference to Linburg's testimony about "concurrent disease processes" could be interpreted to mean that the impairment resulting from the plaintiff's diabetic neuropathy was not a previous disability, we conclude that given the evidence and the findings recited previously, the commissioner could not have reasonably made such an inference. To conclude otherwise, we would have to read the holding in *Deschenes* so broadly that any previous disability that would normally be compensable under § 31-349 (a), but which worsens (i.e., continues to develop) at the same time that a work related disability develops, would be exempt from compensation. We do not so read the holding in *Deschenes*.

It is not disputed that the plaintiff's loss of use of his hands and arms was caused in part by neuropathy that resulted from his work related carpal tunnel and cubital tunnel syndromes. With respect to the plaintiff's work related injuries, the commissioner found that "Dr. Linburg affirmatively responded that the [plaintiff's] work related injuries were a *substantial contributing factor to his current bilateral hand and bilateral upper extremity conditions and their resulting permanencies*." (Emphasis added.) The commissioner also found that "[t]he [plaintiff] sustained compensable bilateral *upper extremities and bilateral hand injuries* on March 5, 2003, which arose out of and in the course of his employment with [UPS]. These injuries were separate and distinct from the [plaintiff's] diabetic neuropathy *which also significantly affected his hands and*

---

[6] The following exchange took place between the plaintiff's counsel and Linburg:

"[Plaintiff's Counsel]: [B]ased on the records, Dr. Linburg, is it your understanding that [the plaintiff] had a preexisting diabetic neuropathy?

"[Linburg]: Yes."

*arms.*" (Emphasis added.) The commissioner found that Linburg, in his testimony of July 13, 2010, testified "that the disability, that of 44 percent and the 40 percent . . . results from a combination of two concurrent disease processes, one of which is nonoccupational, the diabetic neuropathy, and the other one which was the work related injury which caused the carpal tunnel surgery."

On the basis of these findings, we conclude that the plaintiff's permanent disability met the standard in § 31-349, and therefore, may not be apportioned.[7] The board, therefore, incorrectly concluded that the circumstances fell within the narrow statutory gap that our Supreme Court filled with its holding in *Deschenes.*

The decision of the Workers' Compensation Review Board is reversed and the case is remanded to the board with direction to reverse the commissioner's decision

---

[7] We note that the commissioner also stated in subparagraph (M) of the finding and award that Linburg "could not opine that as a result of [the work related] injuries his hands were made worse because of those injuries and because of these injuries his hands were made worse than they would have been had he not sustained those injuries." This statement by the commissioner, however, directly contradicts his other findings, specifically, that it was undisputed that the plaintiff's overall impairment was 44 percent to his elbows and 40 percent to his hands, and that 10 percent of each of those was attributed to his work related injuries. Furthermore, the testimony from Linburg to which the commissioner refers is in response to a two part question, making it impossible to determine which part of the question he was answering:

"[Plaintiff's Counsel]: Right. And as a result of his work injury, his hands were made worse because of those injuries and because of those surgeries, worse than they would have been had he not had that injury at UPS?

"[Linburg]: There again, you can't say that. I mean, the reason for operating on this gentleman is because he has pain. And diabetic neuropathy they just have numbness. They don't usually have—they get their fingers feel funny, and they've got some weakness.

"But surgery, unless they have a compressive neuropathy superimposed on it, it's not doing anything for them.

"And the real problem is, no one can tell you, quite frankly, what part of his neurological deficit is related to his work injury. All he did is have his symptoms improved by surgery."

and to remand the case to the commissioner for further proceedings consistent with this opinion.

In this opinion DiPENTIMA, C. J., concurred.

ROBINSON, J., dissenting. Because I believe that the record in the present case supports the conclusion of the Workers' Compensation Commissioner (commissioner) and the Workers' Compensation Review Board (board), that the plaintiff suffered from disabilities to his hands and arms caused by two independent and concurrently developing disease processes and, thus, that apportionment in accordance with the holding in *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 306, 953 A.2d 13 (2008), was appropriate, I would affirm the decision of the board. Accordingly, I respectfully dissent from the majority's decision to reverse the decision of the board.

The majority opinion adequately sets forth the relevant facts, procedural history, and standard of review. At the heart of the majority's decision to reverse the board is a determination that, because the plaintiff's diabetic neuropathy and resulting impairment to his hands and arms began to develop five years before his occupational injury to those same extremities, the neuropathy legally can be viewed only as a "previous disability" as that term is used in General Statutes § 31-349, and that the two conditions could not properly be found to be "concurrently developing" as is required in order to bring the claimant's disability under the *Deschenes* holding. I disagree.

As set forth in the majority opinion, our Supreme Court stated in *Deschenes* that "apportionment or reduction of permanent partial disability benefits is appropriate only in those cases wherein different diseases, one of which is occupational in nature, have combined to cause, in effect, two different disabilities,

even if they ultimately affect the same bodily part or function." *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 322–23. The court concluded that an employer that sought apportionment or proportional reduction of permanent partial disability benefits therefore had the burden to prove that "(1) a disability has resulted from the combination of two concurrently developing disease processes, one that is nonoccupational, and the other that is occupational in nature; and (2) the conditions of the claimant's occupation have no influence on the development of the nonoccupational disease." Id., 321.

As noted by the board, the commissioner made factual findings on the basis of Dr. Richard Linburg's testimony that the plaintiff's disability resulted from a combination of two separate and distinct yet concurrent disease processes affecting his arms and hands—diabetic neuropathy and occupational carpal and cubital tunnel injuries—and that the occupational injuries did not affect the development of or worsen the effects of the diabetic neuropathy. Those facts would appear to be all that is necessary to bring this matter within the rule established in *Deschenes*. There was no finding made that the diabetic neuropathy was a "previous disability" or that the diabetic neuropathy had stopped progressing at any time prior to the development of the occupational injuries. I can discern nothing from the *Deschenes* opinion suggesting that, as a matter of law, disease processes that begin their development at different times cannot be found to be "concurrently developing disease processes" when disease development overlaps. On the basis of the record before us, I believe that the conclusions drawn by the commissioner from the facts found did not result either from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. The decision of the board, therefore, should be affirmed.

Accordingly, I respectfully dissent.