******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN W. SULLINS *v.* UNITED PARCEL
SERVICE, INC., ET AL.
(SC 19226)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued October 30, 2014—officially released February 17, 2015*

*Nancy S. Rosenbaum,* for the appellants (defendants).

*Robert F. Carter,* with whom was *Nancy L. Meyer,* for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The issue in this certified appeal is whether a disability arising from a progressive nonoccupational condition that manifests prior to an occupational injury that further disables the same body part is a compensable preexisting injury or a noncompensable concurrently developing disease under the apportionment rule set forth in *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 953 A.2d 13 (2008). The defendants, United Parcel Service, Inc. (UPS), and its insurer, Liberty Mutual Insurance Company, appeal from the judgment of the Appellate Court in favor of the plaintiff, John W. Sullins, concluding that the defendants should pay the entirety of the plaintiff's permanent partial disability to his upper extremities and hands, instead of apportioning the payment so that the defendants pay only for the proportion of disability attributed to the plaintiff's occupational injuries, as the Workers' Compensation Review Board (board) and the Workers' Compensation Commissioner for the First District (commissioner) had determined. On appeal, the defendants claim that the Appellate Court improperly determined that *Deschenes* is inapplicable to the facts of the present case and, accordingly, incorrectly concluded that apportionment is not required. We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The plaintiff worked for UPS, unloading trucks and sorting small parts, for approximately thirty-two years. The plaintiff was diagnosed with diabetes in 1987 and with diabetic neuropathy in 1998. The diabetic neuropathy caused impairment to his arms and hands, including weakness and tingling in the plaintiff's hands as well as difficulty in grasping things. On March 5, 2003, the plaintiff suffered injuries to his upper arms and hands as the result of a work related accident. He received medical treatment, including surgeries, and returned to his job duties without restrictions until he retired in 2008. By agreement of the parties, after his original treating physician retired, the plaintiff was examined by Richard Linburg, an arthroscopic hand surgeon, on January 5, 2010. In his report of January 5, 2010, Linburg assigned a disability rating of 44 percent permanent partial impairment to the plaintiff's bilateral upper extremities (arms) and 40 percent permanent partial impairment to the plaintiff's hands. These ratings were not in dispute. Linburg attributed 10 percent of the 44 percent impairment of the plaintiff's arms to work related cubital tunnel syndrome and the surgery used to treat it, and 10 percent of the 40 percent impairment of his hands to work related carpal tunnel syndrome and the surgery used to treat it. Linburg also opined that the plaintiff's occupation and work activities had no influence on the development of the nonoccupational

disease to his arms and hands.

"The plaintiff's claim for benefits pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq., was heard on July 13, 2010, during a formal hearing before the commissioner. The commissioner heard oral argument on July 21, 2010, and issued his finding and award on December 7, 2010. The commissioner found that: (1) '[t]he [plaintiff's] diabetic neuropathy is an independent and nonoccupational developing disease process affecting his arms and hands'; (2) '[t]he [plaintiff's] occupation/work activities had no influence in the development of the nonoccupational disease to his arms and hands'; and (3) '[a]s a result, and pursuant to *Deschenes* . . . the [plaintiff] is entitled to receive 10 [percent] permanent partial disability benefits to his bilateral upper extremities and 10 [percent] permanent partial disability benefits to his bilateral hands, less credits for permanency benefits previously paid on these body parts.' The commissioner issued an order consistent with that finding.

"The plaintiff then filed a motion to correct the commissioner's findings, seeking an order that the disability not be apportioned and, among other corrections, that the commissioner strike subparagraph (K), which referred to the plaintiff's permanent disability resulting from 'a combination of two concurrent disease processes, one of which is nonoccupational, the diabetic neuropathy' and subparagraph (R), which read: 'The [plaintiff's] diabetic neuropathy is an independent and nonoccupational developing disease process affecting his arms and hands.' In place of subparagraph (R), the plaintiff sought to have the commissioner substitute the following: 'The [plaintiff's] diabetic neuropathy is a [preexisting] condition pursuant to [General Statutes] § 31-349 (a).'[1] The commissioner denied the motion in its entirety. The plaintiff then appealed the commissioner's decision to the board.

"The board concluded that the facts found by the commissioner were similar to those found in *Deschenes*, and that, because *Deschenes* also applied to previous disabilities, § 31-349 (a) did not apply. Accordingly, the board affirmed the commissioner's decision." (Footnotes altered.) *Sullins* v. *United Parcel Service, Inc.*, 146 Conn. App. 154, 156–59, 77 A.3d 196 (2013). Additional facts will be set forth as necessary.

The plaintiff appealed to the Appellate Court, claiming that "(1) the board incorrectly applied the holding in *Deschenes* to the facts of this case, (2) the board improperly upheld the commissioner's award because he failed to find that the plaintiff's diabetic neuropathy was a previous disability under § 31-349, (3) the defendants failed to prove, as required by *Deschenes*, that the plaintiff's diabetic neuropathy and work related cubital tunnel and carpal tunnel conditions were 'concurrently developing,' and (4) the board improperly upheld the

commissioner's award even though he failed to make findings of fact necessary to apply the *Deschenes* rule." Id., 159.

A majority of the Appellate Court panel agreed with the plaintiff that "uncontroverted evidence in the record, as well as the commissioner's own findings, show that the impairment caused by the plaintiff's diabetic neuropathy was a previous disability, and because it was, it could not have also been a concurrently developing disease process."[2] Id., 161. Accordingly, the Appellate Court concluded that "the plaintiff's permanent disability met the standard in . . . § 31-349, and therefore, may not be apportioned. The board, therefore, incorrectly concluded that the circumstances fell within the narrow statutory gap that [was] filled . . . in *Deschenes*." (Footnote omitted.) Id., 166.

The defendants petitioned for certification to appeal from the judgment of the Appellate Court. This court granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly apply *Deschenes* v. *Transco, Inc.*, [supra, 288 Conn. 303], and thus properly reverse the [board's] decision upholding the [commissioner's] determination that the [plaintiff] should only be compensated for permanent partial disability that was caused by his work related injury?" *Sullins* v. *United Parcel Service, Inc.*, 310 Conn. 943, 79 A.3d 894 (2013).

On appeal to this court, the defendants assert that the Appellate Court improperly applied *Deschenes* to the facts of this case and improperly concluded that the plaintiff's permanent disability met the standard in § 31-349 (a) and, therefore, may not be apportioned. In response, the plaintiff claims that the Appellate Court properly concluded that the plaintiff was entitled to compensation for the entire disability of each of his upper extremities under § 31-349 (a) because the undisputed evidence demonstrated that the plaintiff's preexisting disability of his upper extremities caused by diabetic neuropathy, when combined with the disability caused by the subsequent compensable accidental injury to his upper extremities at work in 2003, caused a disability that was materially and substantially greater than the disability that would have resulted from the work related injury alone. We agree with the plaintiff and, accordingly, affirm the judgment of the Appellate Court.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Stec*

v. *Raymark Industries, Inc.*, 299 Conn. 346, 355, 10 A.3d 1 (2010). "[Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 844, 930 A.2d 653 (2007)." (Internal quotation marks omitted.) *Ferraro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 746, 99 A.3d 1114 (2014).

Furthermore, "[i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 294 Conn. 132, 150, 982 A.2d 157 (2009).

The present appeal requires us to determine whether, on the basis of the facts found by the commissioner, the plaintiff's claim falls within the ambit of § 31-349 (a), as the plaintiff asserts and the Appellate Court concluded, or whether it falls within the "statutory gap" addressed in *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 314, as the defendants assert and the commissioner and board concluded. In order to resolve this question, we must examine the history and purpose of the act as it relates to preexisting disabilities, the plain language of § 31-349 (a), and this court's prior decisions addressing preexisting conditions, including *Deschenes*. We consider each of these in turn.

A "fundamental principal of workers' compensation, present since the beginning, is that the employer takes the employee in whatever physical condition, with whatever predispositions and susceptibilities the employee may bear prior to his injury." R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation Law (2008) § 1:6, p. 13. In *Hartz* v. *Hartford Faience*

*Co.*, 90 Conn. 539, 543, 97 A. 1020 (1916), this court explained that, "[b]y the terms of [the act], compensation is not made to depend upon the condition of health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency. It is awarded for a personal injury 'arising out of and in the course of his employment,' and for an injury which is a hazard of that employment." This court further explained that, "[w]hen the exertion of the employment acts upon the weakened condition of the body of the employee, or upon an employee predisposed to suffer injury, in such way that a personal injury results, the injury must be said to arise out of the employment. An employee may be suffering from heart disease, aneurism, hernia . . . or other ailment, and the exertion of the employment may develop his condition in such a manner that it becomes a personal injury. The employee is then entitled to recover for all the consequences attributable to the injury. The acceleration or aggravation of a [preexisting] ailment may therefore be a personal injury within [the] [a]ct; and the test may well be . . . [d]id the ailment develop the injury, or did the employment develop it in any material degree? If it did, the injury arose out of the employment." (Citation omitted.) Id., 543–44.

"[T]he employer is responsible for all the consequences of the compensable injury, even though the consequences of the injury may be greater to the injured employee than it would have been had the employee been a normal person. If an employee has a thin skull, and suffers more extensively from a blow to his head than a person with a normal skull would have suffered, nevertheless his condition is covered for medical treatment and disability benefits commensurate with his actual damage." 19 R. Carter et al., supra, § 1:6, p. 14; see also *Savage* v. *St. Aeden's Church*, 122 Conn. 343, 347, 189 A. 599 (1937).

This fundamental principle is reflected in the plain language of § 31-349 (a), which provides as follows: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. *If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability*, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, *notwithstanding the fact that part of the disability was due to a previous disability*. For purposes of this subsection, 'compensation payable or paid with respect to the previ-

ous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation." (Emphasis added.) The plain language of § 31-349 (a) demonstrates that if the plaintiff's permanent disability is materially and substantially greater than the disability that would have resulted from the second injury alone because of the existence of a preexisting disability, the plaintiff shall receive compensation for the entire amount of the disability.

We next consider how this court has previously interpreted § 31-349 (a) in claims involving preexisting disabilities. In 1943, this court decided *Cashman* v. *McTernan School, Inc.*, 130 Conn. 401, 34 A.2d 874 (1943). The plaintiff in that case, a schoolteacher, suffered from progressive preexisting aseptic necrosis of the left hip. Id., 402–403. The aseptic necrosis was caused by a non-work related injury from wrestling years prior to his claim for benefits. Id. The aseptic necrosis did not cause any disability until the plaintiff kicked a soccer ball during school and suffered a work related injury to the hip. Id. At that point, the aseptic necrosis became symptomatic. Id., 403. The commissioner awarded 60 percent permanent partial disability of the leg, finding that one quarter of the impairment resulted from the workplace injury and three quarters from the progressive effects of the preexisting disease. Id. The employer claimed that the award should be reduced under the predecessor to General Statutes § 31-275 (1) (D), which limits compensation for aggravation of a preexisting disease to the proportion of the disability attributable to the injury on which the workers' compensation claim is based. This court rejected that claim and concluded that the statute only required a reduction of benefits for preexisting *occupational* diseases.[3] Id., 408–409. Accordingly, this court affirmed the commissioner's award for the entire disability. Id., 409.

In 1974, this court decided *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 349 A.2d 847 (1974). The plaintiff in that case injured his right knee in the course of his employment and his knee injury required surgery. Id., 354. Immediately after surgery for his knee, the plaintiff died of a heart attack. Id. The commissioner found that the plaintiff had a preexisting heart condition that had been made materially and substantially worse by his knee injury and the resultant surgery. Id., 355. On appeal to this court, one of the defendants claimed that the plaintiff's heart disease did not constitute a "preexisting permanent physical impairment" under § 31-349 (a) because it had not manifested itself during his life or, alternatively, because his employer had no prior knowledge of the heart disease. Id. This court rejected this claim and concluded that the plaintiff's death was compensable. Id., 362.

In *Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 11, 587 A.2d 1023 (1991), overruled in part on other grounds by *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 677 A.2d 1356 (1996), the plaintiff sustained injuries to his back during the course of his employment. Because the act did not provide specific benefits for back impairment until 1967; see Public Acts 1967, No. 842, § 15; the plaintiff did not receive workers' compensation benefits for injuries sustained in the course of his employment in 1954 and 1962. *Levanti* v. *Dow Chemical Co.*, supra, 11. In 1985, the plaintiff sustained a third injury to his back during the course of his employment. Id. This court affirmed the commissioner's application of § 31-349 (a), concluding: "[T]he commissioner determined that the prior injuries had caused a 10 percent back impairment while the third injury had caused a 5 percent back impairment for a total of 15 percent. The defendants do not challenge this finding. Because the earlier injuries increased the extent of the resultant disability by 200 percent, we conclude that the commissioner reasonably determined that the plaintiff's overall disability was materially and substantially greater as a result of the earlier injuries within the meaning of § 31-349." Id., 17. In doing so, this court noted that "the prior impairment need not combine with the compensable injury in any special way, but must merely add something to the overall disability . . . . Thus, evidence that the preexisting impairment has materially increased the claimant's overall disability is sufficient to warrant application of § 31-349." (Citation omitted.) Id.

As these cases demonstrate, this court has consistently concluded that § 31-349 (a) provides compensation for any injury that combines with a preexisting nonoccupational or noncompensable disability to materially increase the claimant's overall impairment. With this history in mind, we now turn to this court's recent decision in *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 303.

In *Deschenes*, the plaintiff had been exposed to significant amounts of asbestos during his employment from 1967 to 1985. Id., 306. In 1994, he was diagnosed with asbestos related pleural lung disease and was unable to work full-time thereafter. Id., 306–307. During the same time at which the plaintiff's lungs were exposed to asbestos, they also were exposed to another toxic substance, due to the plaintiff's longtime cigarette smoking habit. Id., 307. At some unspecified point in time, the plaintiff developed emphysema as a result of his smoking. Id. It was undisputed that the plaintiff had a 25 percent permanent partial disability of his lungs at the time he sought workers' compensation benefits. Id., 306. At the hearing before the commissioner, a physician testified that this impairment was "the result of both [the plaintiff's] asbestos exposure and . . . his former smoking, rather than . . . any smoking that had

occurred after the disease symptoms had begun to develop." (Internal quotation marks omitted.) Id., 308. The physician also testified that three quarters of the plaintiff's disability was related to his emphysema and one quarter of that disability was attributable to the asbestos exposure. Id. The commissioner determined that the plaintiff "had suffered a lung injury as a result of his asbestos exposure at work, and 'another lung injury' that resulted from his 'long history of cigarette smoking . . . .'" Id., 307. The commissioner further determined that the plaintiff had sustained a 25 percent permanent partial disability to each lung "as a result of [his] asbestos related injury." Id. The commissioner determined, however, that "'work related asbestos exposure was a substantial contributing factor to this injury and resulting permanency,' and ordered the defendants to pay permanent partial disability benefits to the plaintiff equating to 25 percent of each of his lungs, apportioned among the defendants, based on his length of prior service with each." Id., 308.

In *Deschenes*, the board affirmed the 25 percent disability award. Id. It emphasized that "even if the plaintiff's smoking related emphysema is considered a 'concurrently developing condition,' rather than a preexisting condition, 'that argument does not undo the foundational tenet that the employer is responsible for the effects of a compensable injury, even if that injury's toll on a particular claimant is unexpectedly severe because of the way it collaborates with other health problems." Id., 309.

On appeal to this court, the defendants in *Deschenes* claimed that the plaintiff was improperly awarded compensation for the entire 25 percent permanent partial disability in each lung, claiming that, because the plaintiff had two distinct lung injuries, one occupational, and one not, they should not have been required to compensate him for the entire disability. Id., 310. The defendants further claimed that the award was improper because "there was no finding that the plaintiff's smoking related emphysema, which was a distinct disease process that had developed concurrently with his asbestos related symptoms and was responsible for 75 percent of his disability, was itself occupational in nature in any way and, therefore, compensable." Id., 310. The defendants claimed that, because "there was no evidence that the plaintiff's emphysema was a preexisting condition that was aggravated by the asbestos exposure . . . the axiom that an employer takes an employee as it finds him [was] inapplicable and that, as a policy matter, employers should not have to bear the costs of their employees' smoking habits." Id.

In examining the defendants' claim, this court recognized "that the legal difficulty in the present case stems from its factual posture, namely, that [the commissioner] did not find that the plaintiff's emphysema was

a preexisting condition that was aggravated by his asbestos-related lung condition, a determination that would have entitled the plaintiff to full compensation under . . . § 31-275 (1) (D). . . . Similarly, [the commissioner] did not find that the plaintiff's emphysema was a 'previous disability' and that the asbestos exposure was a 'second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone,' which would have entitled him to full compensation under . . . § 31-349 (a). Instead, the question presented here, namely, whether the act requires the apportionment of benefits when a disability is caused by two separate, but concurrently developing medical conditions, only one of which is occupational in nature, is one of first impression for Connecticut's appellate courts that requires us to fill a gap in our statutes." (Citations omitted; footnotes omitted.) Id., 312–14.

Ultimately, this court concluded that "apportionment or proportional reduction of permanent partial disability benefits is appropriate when a respondent employer is able to prove that: (1) a disability has resulted from the combination of two concurrently developing disease processes, one that is nonoccupational, and the other that is occupational in nature; and (2) the conditions of the claimant's occupation have no influence on the development of the nonoccupational disease. In our view, this conclusion is consistent with the legislature's treatment of the aggravation of preexisting injuries under § 31-275 (1) (D), and second injuries under § 31-349 (a), in that it accommodates two axiomatic principles of workers' compensation law, namely, that to be compensable, the injury must arise out of and occur in the course of the employment, and also that an employer takes the employee in the state of health in which it finds the employee. . . . *Blakeslee* v. *Platt Bro. & Co.*, 279 Conn. 239, 245, 902 A.2d 620 (2006)." (Footnotes omitted; internal quotation marks omitted.) *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 321–22.

Turning to the present case, the defendants assert that *Deschenes* governs the plaintiff's claim and dictates that the plaintiff's nonoccupational condition does not fall within the ambit of § 31-349 (a). We disagree. Nothing that this court set out in *Deschenes* was intended to be a departure from our traditional workers' compensation law or an abandonment of the principle that an employer takes the employee in the state of health in which it finds the employee. Instead, *Deschenes* was only intended to resolve the narrow issue before it— namely, the extent of compensability when an employee incurs a disability as a result of two concurrently developing disease processes. *Deschenes* involved a worker who was at " 'risk' " of developing a smoking related disease that impaired his lungs prior to the concurrent

development of emphysema and asbestos related pleural lung disease. Id., 311. It was the temporal issue that gave rise to the problem in *Deschenes*, not the fact that these diseases were progressive in nature. This court's emphasis on the concurrently developing nature of the medical conditions was not intended to distinguish diseases that may progressively worsen over time from other compensable injuries. Indeed, a personal injury arising from an accident may progressively worsen over time. We have never held that a disability arising under such circumstances falls outside the general rule applicable to preexisting injuries. Rather, our use of the term concurrently developing was intended to focus on the temporal aspect of the manifestation of these diseases. Although the plaintiff in *Deschenes* had a preexisting risk for developing a smoking related impairment to his lungs, he did not have a preexisting injury from his self-induced toxic exposure. Accordingly, the inference most favorable to the plaintiff in *Deschenes* that the record supported was that his nonoccupational disease manifested at the same time as his occupational disease.

Therefore, the question in the present case is whether the factual findings demonstrate that the plaintiff suffered a preexisting disability that combined with the workplace injury like the claimants in *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 401, and *Jacques* v. *H. O. Penn Machinery Co.*, supra, 166 Conn. 352, or that the plaintiff had two concurrently developing disease processes, like the claimant in *Deschenes*. If the former, the question arises whether the current disability is materially and substantially greater than the disability that would have resulted from the second injury alone, as required to recover for the entire disability under § 31-349 (a).

To resolve these questions, we must undertake a careful examination of the factual findings of the commissioner, which are undisputed. The plaintiff was diagnosed with diabetes in 1987 and diabetic neuropathy in 1989. At the time he was diagnosed with diabetic neuropathy, he already was experiencing weakness and tingling in his hands, a loss of feeling in his fingertips and difficulty grasping items. On March 5, 2003, the plaintiff sustained bilateral upper extremities and bilateral hand injuries that arose out of and in the course of his employment with the defendants. These injuries were separate and distinct from the plaintiff's diabetic neuropathy, which also significantly affected his hands and arms.

The commissioner also found that the plaintiff's "diabetic neuropathy is an independent and nonoccupational developing disease process affecting his arms and hands" and that the plaintiff's "occupation/work activities had no influence in the development of the nonoccupational disease to his arms and hands." Nonetheless, the medical evidence also indisputably demon-

strated that the permanent disability resulted from a combination of the diabetic neuropathy and impairment from the work related injury.

These findings necessarily demonstrate that the commissioner determined that the plaintiff's diabetic neuropathy was a "previous disability." Section 31-275 (20) defines " '[p]revious disability' " as "an employee's preexisting condition caused by total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye resulting from accidental injury, disease or congenital causes, or other permanent physical impairment." See also *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 499 ("[w]e define 'disability,' for the purpose of § 31-349 [a] to refer to a claimant's physical impairment"). The commissioner found that the plaintiff had a medical diagnosis of diabetic neuropathy and the physical manifestations of the disease prior to the workplace accident in March, 2003. The commissioner expressly stated that the plaintiff suffered from "preexisting neuropathy" and that the plaintiff's "preexisting neuropathy is diabetic in nature and not caused by the accepted work related injury."[4]

The record also clearly establishes that the plaintiff's current disability is materially and substantially greater than the disability that would have resulted from the second injury alone, as required by § 31-349 (a). The commissioner found that the preexisting disability, diabetic neuropathy, and the workplace injury combined to cause his current impairment. The commissioner credited testimony that the plaintiff's "work related injuries were a substantial contributing factor to his current bilateral hand and bilateral upper extremity conditions and their resulting permanencies." The commissioner found that the workplace "injuries were separate and distinct from the plaintiff's diabetic neuropathy which also significantly affected his hands and arms." The commissioner further explained that " 'the question is how much of this is residual from his diabetic neuropathy and how much of it is from his median nerve and ulnar nerve compressions.' " The commissioner relied on and credited the following testimony from Linburg: " '[I]n the case of an individual with cubital tunnel syndrome but some residual sensory and motor deficit, I would place a permanent partial functional impairment of the upper extremity of 10 [percent]. On the basis of a release of the carpal tunnel in an individual who has residual motor and sensory deficit, I would place a 10 [percent] permanent partial functional impairment of the hand. In [the plaintiff's] case, however, he has severe motor and sensory loss in both nerves. . . . [W]orst case scenario with motor and sensory deficit, the median nerve is a maximum of 44 [percent] of the upper extremity; motor and sensory deficit of the ulnar nerve below midforearm, maximum is 40 [percent] of the upper extremity. It is my opinion, however, that the major portion of [the plaintiff's] ongoing neurological

findings are on the basis of his polyneuropathy from diabetes as opposed to residual compressive neuropathy, and I would place a 10 [percent] permanent partial functional impairment of each upper extremity on the basis of the cubital tunnel, neurolysis of his ulnar nerve and a 10 [percent] permanent partial functional impairment of each hand on the basis of the carpal tunnel releases.'" Thus, approximately one quarter of the plaintiff's disability is caused by his work related injury.

These findings by the commissioner demonstrate that the plaintiff in the present case had a previous disability and that the previous disability combined with the workplace injury to result in his current impairment. As this court concluded in *Levanti* v. *Dow Chemical Co.*, supra, 218 Conn. 17, "the prior impairment need not combine with the compensable injury in any special way, but must merely add something to the overall disability . . . . Thus, evidence that the preexisting impairment has materially increased the claimant's overall disability is sufficient to warrant application of § 31-349." (Citation omitted.)

Indeed, we conclude that the present case is analogous to the situation in *Jacques*, in which an employee has an ongoing developing disease process and then suffers a work related injury that causes a permanent disability that is made materially and substantially greater than the disability that would have resulted from the second injury alone. See *Jacques* v. *H. O. Penn Machinery Co.*, supra, 166 Conn. 362 (employee with unknown preexisting heart disease and occupational knee injury entitled to full compensation under § 31-349 [a]); see also *Cashman* v. *McTernan School, Inc.*, supra, 130 Conn. 409 (employee with aseptic necrosis of hip who suffered occupational injury to his hip that was made substantially worse because of presence of aseptic necrosis was entitled to full compensation under § 31-349 [a]).

In reaching this conclusion, we are mindful that "[i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 150. Accordingly, we decline to extend *Deschenes* v. *Transco, Inc.*, supra, 288 Conn. 303, in a manner that would unduly undermine established remedial principles. Therefore, we conclude that the Appellate Court properly reversed the board's decision affirming the commissioner's decision in favor of the defendants.

The Appellate Court remanded the case to the board with direction to reverse the decision of the commis-

sioner and to remand the case to the commissioner for further proceedings. *Sullins* v. *United Parcel Service, Inc.*, supra, 146 Conn. App. 166–67. We conclude that, on remand, the factual findings contained within the record require the commissioner to award the plaintiff 44 percent permanent partial disability benefits to his bilateral upper extremities and 40 percent permanent partial disability benefits to his bilateral hands.

The judgment of the Appellate Court is affirmed and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other justices concurred.

[1] General Statutes § 31-349 (a) provides: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation."

[2] Judge Robinson authored a dissenting opinion in which he concluded that "the record in the present case supports the conclusion of the [commissioner] and the [board], that the plaintiff suffered from disabilities to his hands and arms caused by two independent and concurrently developing disease processes and, thus, that apportionment in accordance with . . . *Deschenes* . . . was appropriate . . . ." *Sullins* v. *United Parcel Service, Inc.*, supra, 146 Conn. App. 167.

[3] We note that neither party claims that § 31-275 (1) (D) applies to the present case. Indeed, as the commissioner stated in his factual findings, "[i]n response to a letter dated June 2, 2010 . . . authored by the [plaintiff's] attorney, [Linburg] retracted his opinion that the [plaintiff's] preexisting neuropathy was aggravated by the March 5, 2003 injuries."

[4] Although the plaintiff has not challenged the commissioner's decision on the ground that his work related injury is not an occupational disease, we note that it seems implicit in the facts found that the March, 5, 2003 injury was not an occupational disease, as was the case in *Deschenes*, but an accidental injury that left the plaintiff with nerve damage. Although the commissioner credited the evaluating physician's testimony, which at one point characterized the plaintiff's disability as resulting from "two concurrent disease processes," the commissioner's own characterization of the injury did not use similar terminology and fixed the injury as being sustained on a specific date. As such, it would appear that the injury properly should not be viewed, at least for purposes of *Deschenes*, as an occupational disease. See General Statutes § 31-275 (16) (A) (" '[p]ersonal injury' or 'injury' includes, *in addition to accidental injury that may be definitely located as to the time when and the place where the accident occurred*, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease" [emphasis added]); see also General Statutes § 31-275 (15) (" '[o]ccupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such, and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment").